UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| AOG ENTERTAINMENT, INC., *et al.*,[1] | : | Case No. 16-11090 (SMB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------X

| | | |
|---|---|---|
| 19 ENTERTAINMENT, INC., | : | |
| 19 RECORDINGS, INC., | : | |
| 19 PUBLISHING, INC. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | Adv. Proc. No. 16-01074 (SMB) |
| | : | |
| PHILLIP PHILLIPS, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------X

## MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR PERMISSIVE ABSTENSION, A STAY AND RELIEF FROM THE AUTOMATIC STAY

**A P P E A R A N C E S :**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019

 Matthew A. Feldman, Esq.
 Paul V. Shalhoub, Esq.
 Andrew S. Mordkoff, Esq.
  Of Counsel

 --and--

KENDALL BRILL & KELLY LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

 Bert H. Deixler, Esq.
 Joshua W. Sussman, Esq.

---

[1] A list of the Debtors in the main chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the *Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings.* (ECF/Main Case Doc. # 3.)

Of Counsel

*Counsel for Plaintiffs 19 Entertainment, Inc., 19*
*Recordings, Inc. and 19 Publishing, Inc.*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Robert J. Lemons, Esq.
Jeffrey S. Klein, Esq.
Of Counsel

--and--

KING, HOLMES, PATERNO & SORIANO, LLP
1900 Avenue of the Stars
Los Angeles, California 90067

Howard E. King, Esq.
Stephen D. Rothschild, Esq.
Of Counsel

*Counsel for Defendant Phillip Phillips*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Plaintiffs commenced this adversary proceeding seeking declaratory, monetary and

turnover relief against the Defendant, Phillip Phillips ("Phillips"), arising under several contracts

between the parties. An administrative proceeding involving some of these claims was already

pending between the parties in California when the Plaintiffs filed their chapter 11 cases.

Phillips has moved for mandatory or permissive abstention, or alternatively, to stay this

adversary proceeding and for relief from the automatic stay to continue the California

proceeding. (*Motion of Phillip Phillips for (I) Abstention Pursuant to 28 U.S.C. § 1334(c)(2) or*

*(c)(1) or, in the Alternative, for Stay of this Adversary Proceeding and (II) for Relief from the*

*Automatic Stay*, dated July 19, 2016 (the "*Abstention Motion*") (ECF/Phillips Doc. # 11). The

Plaintiffs oppose the *Abstention Motion*.

2

For the reasons that follow, the Court will abstain from deciding the adversary proceeding in the exercise of its discretion to the limited extent indicated, stay the adversary proceeding, and grant Phillips relief from the automatic stay to prosecute the parallel administrative proceeding in California to the extent of the issues that the Court has abstained from deciding.

## BACKGROUND[2]

### A.    Relevant Parties and Contractual Arrangements

The Debtors and their non-debtor affiliates and subsidiaries (collectively, the "Debtors" or the "Company") are engaged in the business of owning, producing, developing and monetizing entertainment content.  (*Hurwitz Declaration* at ¶ 7.)  The Company's portfolio includes the "IDOL" brand of shows, including American Idol, a televised talent contest for musical artists, (*id.* at ¶ 12), and other similar franchises (collectively, "IDOLS"), and So You Think You Can Dance.  (*Id.* at ¶ 7.)  Through the Debtor 19 Entertainment Limited, the parent of the Plaintiffs, the Debtors own proprietary rights to the IDOLS television format.  (*Id.* at ¶ 12).)  Following a deterioration in the Company's financial condition due primarily to the decline in ratings and eventual cancellation of American Idol, the Debtors, including the Plaintiffs, commenced these chapter 11 cases on April 28, 2016.  (*E.g.*, *id.* at ¶¶ 2, 9.)

---

[2]    The following conventions are used in citing to the record.  "ECF/Main Case Doc. # __" refers to documents filed on the docket of the main chapter 11 case, *In re AOG Entertainment, Inc., et al.,* case no. 16-11090.  "ECF/Phillips Doc. # __" refers to documents filed in this adversary proceeding.  "Tr." refers to the transcript of the hearing held in this adversary proceeding on September 13, 2016 (ECF/Phillips Doc. # 25), "*Complaint*" refers to the *Adversary Complaint for (1) Breach of Written Contract; (2) Anticipatory Repudiation/Breach of Written Contract; (3) Turnover of Property of the Estate; (4) Declaratory Judgment*, dated June 2, 2016 (ECF/Phillips Doc. # 1); "*Adversary Proceeding Answer*" refers to the *Defendant's Answer, Defenses and Affirmative Defenses to Plaintiffs' Complaint*, dated July 19, 2016 (ECF/Phillips Doc. # 10); "*Hurwitz Declaration*" refers to the *Declaration of Peter Hurwitz, President of Certain Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, dated April 28, 2016 (ECF/Main Case Doc. # 3).

Phillips is a performing and recording artist, and the winner of the eleventh season of American Idol. (*Abstention Motion* at ¶ 10.)  In January 2012, Phillips and the Plaintiffs entered into four agreements:  (i) an exclusive agreement for management of Phillips's career as an entertainer dated as of January 27, 2012 (the "Management Agreement"); (ii) an exclusive agreement for management of Phillips's endorsement and merchandising opportunities dated as of January 27, 2012, as amended on November 30, 2012 (the "Merchandising Agreement"); (iii) an exclusive artist recording services agreement dated as of January 27, 2012 (the "Recording Agreement"); and (iv) an exclusive songwriter and co-publishing agreement dated as of January 27, 2012 (the "Publishing Agreement," and collectively with the Management Agreement, the Merchandising Agreement and the Recording Agreement, the "Agreements").[3] (*Complaint* at ¶¶ 16-19.)  Each of the Agreements is governed by California law.  *See* Recording Agreement, *Agreement Filing*, Ex. A, § 27.1, at 60; Management Agreement, *Agreement Filing*, Ex. B, § 19(b), at 11; Merchandising Agreement, *Agreement Filing*, Ex. C, § 19(d), at 15; Publishing Agreement, *Agreement Filing*, Ex. E, § 21(d), at 29.

## B.    Prepetition Proceedings in California

California's Talent Agencies Act, CAL. LAB. CODE §§ 1700-1700.47 (the "TAA"), regulates the "procure[ment] of professional 'employment or engagements' for creative or performing 'artists.'"  *Styne v. Stevens*, 26 P.3d 343, 346 (Cal. 2001) (quoting CAL. LAB. CODE §1700.4(a)).  Those that provide talent agency services, regardless of their label, must be licensed, CAL. LAB. CODE § 1700.5; those that provide personal management services need not

---

[3]    The Agreements are annexed as exhibits to the *Notice of Filing of Agreements in Connection with Plaintiffs' Adversary Proceeding Against Phillip Phillips*, dated Sept. 16, 2016 (the "*Agreement Filing*") (ECF/Phillips Doc. # 23).

be.  *See Styne*, 26 P.3d at 349 (the TAA "does not cover other services for which artists often contract, such as personal and career management").

The California Labor Code vests exclusive original jurisdiction to hear and determine controversies arising under the TAA in the Labor Commissioner, *i.e.*, the Chief of the California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE").  CAL. LAB. CODE §§ 21, 1700.44; *Styne*, 26 P.3d at 352; *Blanks v. Shaw*, 171 Cal. App. 4th 336, 360 (Cal. Ct. App. 2009).  If a case presents "*any* colorable basis for the exercise of the [Labor] Commissioner's jurisdiction" under the TAA, the matter "must" be submitted for the Labor Commissioner's examination, *Styne*, 26 P.2d at 355 (emphasis added), and the Labor Commissioner must resolve "both jurisdictional and merits issues, as appropriate."  *Id.* at 355 n. 10.

The TAA does not specify a remedy for a violation.  *Marathon Entm't, Inc. v. Blasi*, 174 P.3d 741, 751 (Cal. 2008).  The California Supreme Court has held that the Labor Commissioner may void a manager-talent contract *ab initio* for unlawful procurement, but he may also partially enforce a contract in the exercise of his discretion under the doctrine of severability.  *Marathon*, 174 P.3d at 752-53, 755.  It appears that any remedies based, for example, on claims such as breach of contract or breach of fiduciary duties must be sought through a plenary action.  *See A&E Television Networks, LLC v. Pivot Point Entm't, LLC*, No. 10 Civ. 9422 (PGG), 2011 WL 182083, at \*5 n.4 (S.D.N.Y. Jan. 18, 2011) (quoting *Marathon*, 174 P.3d at 753 (quoting Cal. Entertainment Com., Rep. at 17-18 (Dec. 2, 1985))) (noting that the TAA's legislative history suggests its drafters believed common law remedies would be employed through legal action in civil courts once a contract was found to violate the TAA).

Any determination by the Labor Commissioner is subject to an appeal within ten days to the California Superior Court, which "shall" hear the matter *de novo*. CAL. LAB. CODE § 1700.44(a); *Styne*, 26 P.3d at 351. On appeal, the "aggrieved party is entitled to a full new trial in the superior court according to the rules and procedures applicable," *Buchwald v. Katz*, 503 P.2d 1376, 1381-82 (Cal. 1972), and as such, presumably has a right to a jury trial on any issues triable by jury. *See, e.g., Grafton Partners, L.P. v. Superior Court*, 116 P.3d 479, 481 (Cal. 2005) ("When parties elect a judicial forum in which to resolve their civil disputes, article I, section 16 of the California Constitution accords them the right to trial by jury (with limited exceptions not relevant in the present case)."); *see also* CAL. CIV. PROC. CODE § 631 (statute implementing article I, section 16 of the California Constitution for civil cases). The Labor Commissioner's findings carry no weight at the trial. *Marathon*, 174 P.3d at 750 (citing *Buchwald*, 503 P.2d at 1380-81). His rulings interpreting the TAA, on the other hand, deserve "substantial weight," *Styne*, 26 P.3d at 350, although the weight to be accorded "varies according to the validity of their reasoning and their overall persuasive force." *Marathon*, 174 P.3d at 754. Absent an appeal, the Labor Commissioner's determination is binding on the parties. *See REO Broadcasting Consultants v. Martin*, 81 Cal. Rptr. 2d 639, 646 (Cal. Ct. App. 1999).

On January 22, 2015, Phillips filed a *Petition to Determine Controversy* (the "*California Petition*") before the DLSE. (*Abstention Motion*, Ex. B.) The *California Petition* alleged that the Plaintiffs procured employment for Phillips but lacked a talent agent license, and thereby engaged in a "pattern and practice of flagrant violations" of the TAA. (*California Petition* at ¶¶ 12, 14.) The *California Petition* also alleged that the Plaintiffs breached their fiduciary duties by failing to disclose material facts and engaging in self-dealing, (*id.* at ¶¶ 13, 15-18), and that Plaintiff 19 Entertainment, Inc. breached the Management Agreement by "failing to render the

type of services that a first class personal manager would customarily render and by failing to use its best reasonable efforts to enhance and develop [Phillips's] career."  (*Id.* at ¶ 20.)  The *California Petition* stated that Phillips terminated the Agreements on December 22, 2014 as a result of these violations and breaches, (*id.* at ¶ 21), and requested several forms of relief including an order determining that the Plaintiffs violated the TAA, (*id.* at 8 ¶ 1), a determination that the Agreements are "illegal, unenforceable, and void *ab initio*" such that Phillips is not liable under them, (*id.* at 8 ¶ 2), disgorgement of all value received by the Plaintiffs in respect of the Agreements, (*id.* at 8 ¶ 3), and costs and attorneys' fees.  (*Id.* at 8 ¶ 4.)

On February 17, 2015, the Plaintiffs filed their *Answer to Petition to Determine Controversy* (the "*California Petition Answer*") with the DLSE.  (*Abstention Motion*, Ex. C.) They characterized the *California Petition* as an "example of an abuse of the [TAA]," noted that Phillips was represented by counsel when he entered into the Agreements and the alleged improper transactions referenced in the *California Petition*, and implied that Phillips seeks to "reap a financial windfall" through an unintended use of the TAA.  (*California Petition Answer* at 1.)  Additionally, the *California Petition Answer* generally denied all of the allegations asserted in the *California Petition*, (*id.* at 2), and included thirteen affirmative defenses, including consent, ratification, unjust enrichment, waiver, unclean hands and the statute of limitations.  (*Id.* at ¶¶ 1-13.)

On November 12, 2015, the Labor Commissioner's Hearing Officer to whom the *California Petition* had been assigned scheduled a hearing on the merits of the *California Petition* for December 4, 2015.  (*Order Staying Action Pending Disposition of Bankruptcy Petition* (the "*California Stay Order*") (*Abstention Motion*, Ex. D) at 2).)  The Plaintiffs requested an adjournment, and on December 8, 2015, the Hearing Officer issued an order

7

outlining a procedure for the parties to follow in re-setting the hearing date and in raising and

having heard any pre-hearing issues. (*Id.*) In early April 2016, the Plaintiffs filed an application

to file confidential agreements under seal and moved for a partial judgment on the pleadings.

(*Id.*) The Hearing Officer issued an order for briefing and hearing on the confidential filing

application and partial judgment motion but did not re-set the date for the merits hearing. (*Id.*)

Following the Debtors' April 28, 2016 chapter 11 filings, the Hearing Officer stayed the

proceedings before the DLSE "until further notice" and closed the matter, with all papers ordered

placed in storage, "based on the assumption that it will not be re-opened and that the matters

raised in the [*California Petition*] will be adjudicated in or discharged by the Bankruptcy Court."

(*Id.* at ¶¶ 1-2.) He authorized Phillips or the Plaintiffs to seek to "re-open any portion of the

matter by submitting and serving a request to do [the] same, along with reasons to do so." (*Id.* at

¶ 3). The Hearing Officer also admonished the parties to retain copies of all papers filed before

him given that the file would be placed into storage. (*Id.* at ¶ 4.)

## C.    The Adversary Proceeding

The Plaintiffs filed the *Complaint* in this adversary proceeding on June 2, 2016, asserting

four claims for relief. First, Phillips breached the Management Agreement by refusing to pay

$850,000 due and owing to 19 Entertainment, Inc.. (*Complaint* at ¶¶ 26-31.) Second, Phillips

committed an anticipatory repudiation and breached all four Agreements when he refused to

perform and insisted that he would not prospectively perform. (*Id.* at ¶¶ 32-40.) Third, the

Plaintiffs seek a turnover of estate property pursuant to 11 U.S.C. § 542 arising from Phillips's

alleged refusal to pay the money due and owing under the Management Agreement (the

"Turnover Claim"). (*Id.* at ¶¶ 41-48.) Fourth, the Plaintiffs seek a declaratory judgment that the

Agreements between the Plaintiffs and Phillips are in effect and that each party is obligated to

perform pursuant to their terms (the "Declaratory Judgment Claim"). (*Id.* at ¶¶ 49-53).) In the *ad damnum* clause, the Plaintiffs seek nearly $6 million in damages as well as the declaratory relief under the Declaratory Judgment Claim. (*Complaint* at 9.)

Phillips filed the *Adversary Proceeding Answer* on July 19, 2016. The *Adversary Proceeding Answer* denies the material allegations in the *Complaint,* and in compliance with Local Bankruptcy Rule 7012-1,[4] states that he does not consent to the entry of a final judgment by this Court if the Court is unable to do so under Article III in the absence of Phillips's consent. The *Adversary Proceeding Answer* also asserts several affirmative defenses, including failure to state a claim upon which relief can be granted, waiver, failure of consideration, the Plaintiffs' alleged violations of the TAA, unclean hands and failure to mitigate damages. (*Adversary Proceeding Answer* at ¶¶ 56-62.)

**D.     The Plan**

The Debtors confirmed their *Second Amended Joint Chapter 11 Plan of Reorganization for AOG Entertainment, Inc. and its Affiliated Debtors*, dated Aug. 4, 2016 (the "*Plan*") (ECF/Main Case Doc. # 294), on September 23, 2016. (*See Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization for AOG Entertainment, Inc. and its Affiliated Debtors* (the "*Confirmation Order*") (ECF/Main Case Doc. # 436).) The *Plan* discharged the Debtors from liability on all debts, interests, rights and liabilities, to the fullest extent permitted by Bankruptcy Code § 1141, "except as otherwise provided" in the *Plan* or the *Confirmation Order*. (*Plan* § 12.2.) The Plan also enjoined any

---

[4]     Local Bankruptcy Rule 7012-1 was in effect at the time Phillips filed the *Adversary Proceeding Answer* but was repealed as of December 1, 2016 in light of amendments to Federal Rule of Bankruptcy Procedure 7012. Federal Rule of Bankruptcy Procedure 7012(b) now requires that the pleader state whether "the party does or does not consent to the entry of final orders or judgment by the bankruptcy court."

action against the Plaintiffs that was "inconsistent with the provisions of [the *Plan*]," provided

that the injunction did not extend to efforts to exercise rights under to the *Plan*.  (*Plan* § 12.5(a).)

The *Plan* became effective on October 17, 2016.  (*Notice of (I) Entry of Order Confirming*

*Second Amended Joint Chapter 11 Plan of Reorganization for AOG Entertainment, Inc. and its*

*Affiliated Debtors; (II) Occurrence of Effective Date; and (III) Deadline for Filing Fee Claims,*

*Administrative Expense Claims and Claims Arising from Rejection of Executory Contracts or*

*Unexpired Leases*, dated Oct. 17, 2016, at ¶ 2 (ECF/Main Case Doc. # 453).)

     The Plaintiffs had previously designated the Agreements for assumption pursuant to

Bankruptcy Code § 365, (*see Notice of Filing of Proposed Schedule of Assumed Contracts and*

*Leases and Related Cure Amounts in Connection with Second Amended Joint Chapter 11 Plan of*

*Reorganization for AOG Entertainment, Inc. and its Affiliated Debtors*, dated Sept. 1, 2016, Ex.

A, at 50 (ECF/Main Case Doc # 354)), but the validity of the Agreements was still at issue at the

time of the confirmation hearing.  In order to facilitate confirmation while the issues regarding

the Agreements were unresolved, the parties reached an interim resolution that was embodied in

Appendix III to the *Confirmation Order*.  First, neither the *Confirmation Order* nor the *Plan*

constituted the assumption of, or determination of rights with respect to, any of the Agreements.

(*Confirmation Order*, Appendix III at ¶ 3; *see also Confirmation Order* at ¶ 10 (incorporating

Appendix III).)   Second, neither the *Plan* nor *Confirmation Order* enjoined Phillips from

seeking a final, non-appealable determination regarding the rights of the parties pursuant to any

Agreement.  (*Confirmation Order*, Appendix III at ¶ 3.)  Third, once a final determination was

made as to whether any Agreement was valid or enforceable, or whether any Plaintiff or Phillips

"has any outstanding liability under such contract under applicable non-bankruptcy law," the

Plaintiffs could assume any valid and enforceable Agreement within ten days provided they

satisfied any applicable cure obligations, and any assumed Agreement would be subject to the terms of the *Plan* and the *Confirmation Order*.  (*Id.*)

**E.    The *Abstention Motion***

**1.    Mandatory Abstention**

Phillips filed the *Abstention Motion* contemporaneously with his *Adversary Proceeding Answer*.  The parties agree that the motion for mandatory abstention was timely but disagree about whether he satisfied the remaining elements of the mandatory abstention motion.  Phillips contends that the adversary proceeding is a garden variety, non-core contract action, (*Abstention Motion* at ¶¶ 38, 42), the Labor Commissioner has "exclusive and original jurisdiction over any disputes arising under the TAA," (*id.* at ¶ 43), and Phillips suggests that California law strips this Court of federal jurisdiction, at least until the Labor Commissioner makes his decision.  (*Id.* at ¶ 44.)  Finally, Phillips argues that *California Petition* is pending in a state forum of appropriate jurisdiction, (*id.* at ¶ 45), and the proceedings before the Labor Commissioner can be timely adjudicated.  (*See id.* at ¶ 46 (arguing that proceedings before the Labor Commissioner had reached "advanced stages" and could proceed in the normal course once reopened pursuant to the *California Stay Order*).)

The Plaintiffs argue that mandatory abstention is inapplicable.  The claims do not entirely involve California state law, "fall beyond the scope of the TAA," "directly implicate[] sections 365 and 1123(b)(2) of the Bankruptcy Code" based on their relationship to the Debtors' decision to assume or reject the Agreements and the Turnover Claim under Bankruptcy Code § 542 is core.  (*Plaintiffs' Objection to Motion of Phillip Phillips for (I) Abstention Pursuant to 28 U.S.C. § 1334(c)(2) or (c)(1) or, in the Alternative, for Stay of this Adversary Proceeding and (II) for Relief from the Automatic Stay*, dated Sept. 6, 2016 (the "*Objection*"), at ¶¶ 25, 26 (ECF/Phillips

Doc. # 16).)  In addition, the adversary proceeding is core because it will have a significant

impact on the Plaintiffs' business and the administration of their estates. (*Id.* at ¶¶ 41-49.)

Furthermore, the lawsuit could have been commenced in federal court by virtue of diversity

jurisdiction under 28 U.S.C. § 1332, (*id.* at ¶ 51), the Labor Commissioner lacks jurisdiction to

hear certain claims related to this dispute, including tort claims, (*id.* at ¶¶ 52, 61), and any

determination by the Labor Commissioner is subject to *de novo* review in the California state

court system.  (*Id.* at ¶¶ 57).

Phillips filed a reply that responded to the Plaintiffs' arguments and repeated many of his

earlier arguments.  (*Reply in Support of the Motion of Phillip Phillips for (I) Abstention Pursuant
to 28 U.S.C. § 1334(c)(2) or (c)(1) or, in the Alternative, for Stay of this Adversary Proceeding
and (II) for Relief from the Automatic Stay*, dated Sept. 12, 2016 (the "*Reply*") (ECF/Phillips

Doc. # 18).)  He did not expressly challenge the Plaintiffs' contention that the adversary

proceeding could have been brought in federal court by virtue of diversity jurisdiction, but did

continue to argue that the Labor Commissioner had exclusive jurisdiction over the dispute.

(*Reply* at ¶ 18.)

### 2.    Permissive Abstention

Relying on many of the same arguments, Phillips contends that the Court should exercise

its discretion to abstain under 28 U.S.C. § 1334(c)(1) because, *inter alia*, complex issues of

California law and public policy predominate and the Labor Commissioner has greater

familiarity than this Court with these issues.  (*Abstention Motion* at ¶¶ 48, 54-57.)  Only the

Turnover Claim requires an application of bankruptcy law, and that claim depends on the

resolution of underlying state law issues.  (*Id.* at ¶¶ 54, 60.)  The Plaintiffs' remaining claims

turn on the application of the TAA, which is a "unique and complex statutory scheme with which

bankruptcy courts have little or no familiarity," (*id.* at ¶ 55), and other aspects of California law.

(*See id.* at ¶ 74 (noting relevance of California entertainment law to dispute).)  Further, this

adversary proceeding is "not intertwined" with the Debtors' reorganization because the Debtors

confirmed their plan on September 22, 2016, and have agreed with Phillips that they can delay

their decision to assume or reject the Agreements until the issues underlying this adversary

proceeding have been litigated.  (*Reply* at ¶ 39.)  Finally, Phillips is entitled to a jury trial in

California state court on the claims raised in the *Complaint*.  (*Id.* at ¶ 36.)

The Plaintiffs oppose permissive abstention, and their arguments also mirror many of

those directed against mandatory abstention.  Permissive abstention will not serve judicial

economy because the decision of the Labor Commissioner will be subject to *de novo* review and

will address only a "small fraction…of the claims in question" as he lacks jurisdiction to hear

certain of the claims at issue in this adversary proceeding.  (*Objection* at ¶ 83.)  Additionally, the

adversary proceeding is closely tied to the Plaintiffs' assumption of the Agreements and

potentially threatens the reorganized Company's business structure.  (*Id.* at ¶¶ 88-89).  A

favorable outcome for Phillips could result in further litigation with other contestants that signed

similar agreements.  (*Id.* at ¶ 88.)  The state law issues do not predominate because the TAA is

not applicable to the current dispute, the adversary proceeding raises questions under sections

365 and 542 of the Bankruptcy Code, (*id.* at ¶ 84), the California law issues are "generic and are

premised on well-established legal principles," (*id.* at ¶ 86), and the importance of the outcome

to the Plaintiffs' business vitiates the significance of state law issues.  (*See id.* at ¶ 91 (arguing

that abstention is inappropriate because the adversary proceeding is "intertwined" with the

Debtors' chapter 11 cases).)  Finally, the causes of action could have been asserted in federal

court on the basis of diversity jurisdiction, (*id.* at ¶ 87), the adversary proceeding is core, (*e.g.,* *id.* at ¶ 90), the Court's docket can accommodate the adversary proceeding, (*id.* at ¶ 92), the Plaintiffs are not forum shopping, (*id.* at ¶ 93), and Phillips seeks abstention in favor of a hearing before the Labor Commissioner and has no right to a jury trial. (*Id.* at ¶ 94.)

### 3.    Stay of Adversary Proceeding

In the event that this Court finds that mandatory abstention is inapplicable and declines to exercise its discretion to abstain, Phillips argues that this Court should exercise its inherent power to manage its docket and stay the adversary proceeding in order to promote judicial economy and avoid confusion and possibly inconsistent results. (*Abstention Motion* at ¶ 64-65.)

### 4.    Relief from the Automatic Stay

Phillips also argues that cause exists under section 362(d)(1) of the Bankruptcy Code to grant relief from the automatic stay and enable Phillips to litigate the *California Petition* before the Labor Commissioner under the twelve-factor test articulated in *Sonnax Industries, Inc. v. Tri Component Products Corporation* (*In re Sonnax Industries, Inc.*), 907 F.2d 1280 (2d Cir. 1990). (*Id.* at 66-67, 70.)

### DISCUSSION

### A.    Mandatory Abstention

Title 28, section 1334(c)(2) of the United States Code governs mandatory abstention. It states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if

an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Court must abstain if "(1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be 'timely adjudicated' in state court." *N.Y. City Employees' Ret. Sys. v. Ebbers* (*In re WorldCom, Inc. Secs. Litig.*), 293 B.R. 308, 331 (S.D.N.Y. 2003) (citing *ML Media Partners, LP v. Century/ML Cable Venture* (*In re Adelphia Commun. Corp.*), 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002) and *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002)); *accord In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010). Typically, the party seeking mandatory abstention bears the burden of proving he is entitled to it, *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011), and the failure to satisfy even one factor will be fatal. *Trustees of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP,* No. 08 Civ. 10494 (GEL), 2009 WL 290543, at *4 (S.D.N.Y. Feb. 6, 2009); *Kirschner v. Grant Thornton, LLP (In re Refco, Inc. Secs. Litig.),* 628 F. Supp. 2d 432, 445 (S.D.N.Y. 2008); *WorldCom Secs. Litig.,* 293 B.R. at 331.

Phillips has failed to prove that mandatory abstention is required because bankruptcy jurisdiction under 28 U.S.C. § 1334 is not the sole basis of federal jurisdiction. Title 28, section 1332, grants federal district courts diversity jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For purposes of diversity jurisdiction, an individual is a citizen of the state in which he or she is domiciled. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A corporation is "deemed to be a citizen of every State…by which it has been incorporated and of the State…where it has its principal place of business." 28 U.S.C. § 1332(c). Here, the Plaintiffs

seek a judgment of not less than $5,850,000, satisfying the requirement regarding the amount in controversy.  In addition, Phillips resides in Georgia,[5] (*California Petition* at ¶ 5; *accord Abstention Motion* ¶ 10), the Plaintiffs are incorporated either in Delaware or New York, and each has its principal place of business in California.  (*Complaint* ¶ 1.)  Consequently, diversity jurisdiction exists.

Phillips nevertheless argues that California law strips federal courts of diversity jurisdiction in claims involving TAA issues because section 1700.44(a) of the California Labor Code grants the Labor Commissioner exclusive jurisdiction over any controversy arising under the TAA.  (*Abstention Motion* ¶ 44.)  I disagree.  Federal diversity jurisdiction is a creature of Article III of the United States Constitution and the federal diversity jurisdiction statute, and state law cannot limit or control it.  *Chicago & Northwestern Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1871) (A right conferred by state law "cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court."); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) ("Although the states have the power to prevent the federal court from granting relief in a diversity case by denying the substantive right of action asserted, they 'have no power to enlarge or contract the federal jurisdiction.'" (quoting *Markham v. City of Newport News*, 292 F.2d 711, 713 (4th Cir. 1961))); *Codos v. Nat'l Diagnostic Corp.*, 711 F. Supp. 75, 77 (E.D.N.Y. 1989) ("[S]tate legislatures have no power to expand or contract federal diversity jurisdiction.").

---

[5]        Phillips has not disclosed his domicile but he has also not challenged the Plaintiffs' diversity analysis.  This implies a concession on his part that Georgia is his domicile.

In fact, Phillips's principal authority reached the same conclusion. In *Lauwrier v. Garcia*, No. CV 12-07381 MMM (SHx), 2013 WL 11238497 (C.D. Cal. Mar. 8, 2013), the plaintiff was employed as manager of the defendants who were members of a band. *Id.* at *1. After a dispute arose regarding his share of the proceeds of the band's tours, the plaintiff brought a diversity action against the defendants asserting claims, *inter alia*, for breach of contract, fraud in the inducement and breach of covenant of good faith and fair dealing. *Id.* at *1-2. The defendants moved to dismiss for lack of subject matter jurisdiction under Federal Civil Rule 12(b)(1). *Id.* at *1 They argued that the plaintiff's solicitation of employment or artistic engagements violated the TAA, the TAA vested exclusive original jurisdiction over the dispute with the Labor Commissioner, and the plaintiff was required to exhaust his administrative remedies before the Labor Commissioner as a jurisdictional prerequisite to maintaining the civil action. *Id.* at *3. The defendants did not dispute that the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a) were otherwise met. *Id.*

The district court rejected the defendants' jurisdictional argument because state law could not strip a federal court of federal jurisdiction. *Id.* at *4. Thus, even if the claims arose under the TAA, "[o]nly Congress, by repealing 28 U.S.C. § 1332, has the constitutional authority to abolish or limit the district court's [diversity] jurisdiction." *Id.* at *3-4. The district court nevertheless converted the defendants' motion, *sua sponte*, to a motion to dismiss for failure to state a claim pursuant to Federal Civil Rule 12(b)(6), *id.* at *4, and concluded that the exhaustion requirement was a substantive element of the plaintiff's claims under California law to the extent the plaintiff's claims colorably arose under the TAA. *Id.* at *6-7. The plaintiff had not alleged that he had exhausted the TAA claims before the Labor Commissioner, and accordingly, had failed to state a claim. *Id* at *9. Notwithstanding this conclusion, the district court did not

17

dismiss the action outright.  Instead, it stayed the proceeding "to permit Lauwrier to obtain the

Labor Commissioner's review of his claims," and directed the parties to "report any ruling by the

Labor Commissioner within ten days of entry."  *Id.*  This Court will follow a similar procedure

with respect to the *Abstention Motion.*

*Lauwrier* confirms that the TAA cannot and does not deprive a federal court of subject

matter jurisdiction granted by Congress.  Because diversity jurisdiction exists over the instant

adversary proceeding under 28 U.S.C. § 1332 and 28 U.S.C. § 1334 is not the sole basis of

federal jurisdiction, mandatory abstention does not apply.

## B.    Permissive Abstention

Title 28, section 1334(c)(1) of the United States Code grants district courts (and by

reference, the bankruptcy courts) the discretion to abstain from hearing cases within their

bankruptcy jurisdiction "in the interest of justice, or in the interest of comity with State courts or

respect for State law."  This provision codifies non-bankruptcy permissive abstention doctrine.

*Dreier*, 438 B.R. at 458 (citing *Coker v. Pan American World Airways (In re Pan American

Corp.)*, 950 F.2d 839, 845 (2d Cir. 1991)).  In determining whether to abstain in the exercise of

discretion, courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court
> recommends abstention, (2) the extent to which state law issues predominate over
> bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law,
> (4) the presence of a related proceeding commenced in state court or other non-
> bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
> (6) the degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case, (7) the substance rather than form of an asserted "core"
> proceeding, (8) the feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with enforcement left to
> the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood
> that the commencement of the proceeding in a bankruptcy court involves forum
> shopping by one of the parties, (11) the existence of a right to a jury trial, and (12)
> the presence in the proceeding of non-debtor parties.

*In re Cody, Inc.*, 281 B.R. 182, 190-91 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part*, 338 F.3d 89 (2d Cir. 2003) (citing *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, No. 94 B 44488 (JGH), 1999 WL 294995 at *3 (S.D.N.Y. May 11, 1999); *Dreier*, 438 B.R. at 458-59. Here, the applicable factors weigh in favor of permissive abstention.

### 1.    State Substantive Law Factors (Factors 2, 3, 4, 7, 8)

Notwithstanding the Turnover Claim, the resolution of the parties' dispute turns on state law. The Turnover Claim seeks payment of monies allegedly due under the Management Agreement and withheld in breach of that agreement. Phillip disputes his liability. "[T]he well-settled law in this district [is] that § 542(b) cannot be used to recover a disputed pre-petition debt." *Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*), 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (collecting cases). The Plaintiff's Turnover Claim is simply a garden-variety breach of contract claim that arose pre-petition and will be determined under California law. Moreover, the Court cannot sever and hear the Turnover Claim without also deciding the TAA claims. *See Garner v. Todd* (*In re Todd Entm't*), 397 B.R. 795, 802 (Bankr. N.D. Tex. 2008) (finding underlying state law issues, including effect of TAA, to be inseparable from avoidance and turnover claims in the pending adversary proceeding). In short, state law issues predominate over any bankruptcy law issues with respect to this adversary proceeding.

The state law issues are also especially difficult. First, the Court would have to determine whether the Plaintiffs procured employment for Phillips in violation of the TAA. The California Supreme Court has emphasized that the TAA is "narrowly focused" and "does not cover other services for which artists often contract, such as personal and career *management*," which includes "advice [and] direction…with respect to an artist's career." *Styne*, 26 P.3d at 349 (emphasis in original). The task of classifying a particular act as impermissible procurement or

permissible advice and counseling is a difficult one.

Second, the materiality of isolated violations is problematic.  "[A]n isolated instance of procurement does not automatically bar recovery for services that could lawfully be provided without a license." *Marathon*, 174 P.3d at 755.  Notably, the California Supreme Court does not appear to have elaborated as to what constitutes "substantial" procurement activities beyond suggesting, by way of example, that a personal manager who spends "1 percent of his time procuring or soliciting" and the remaining 99 percent lawfully providing services that require no license is not engaged in "substantial" procurement activities and therefore may recover compensation for lawfully provided services.  *See id.*

Third, the appropriate remedy for a violation of the TAA is unsettled.  Phillips concedes that the Agreements "as written" do not violate the TAA.  (Tr. at 31:23-32:2.)  Instead, he contends that notwithstanding what the Agreements say, the Plaintiffs' conduct violated the TAA, and this conduct rendered all of the Agreements void *ab initio*.  (Tr. at 32:3-23; s*ee Abstention Motion* ¶ 39 (arguing that the Agreements must comply with the TAA at risk of being deemed void *ab initio*); *see also California Petition* at ¶¶ 12, 14 (alleging TAA violations by the Plaintiffs).).

As noted, however, the common law doctrine of severability applies under the TAA. California law provides in this regard that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."  Cal. Civ. Code § 1599; *accord Marathon*, 174 P.3d at 750 (quoting Cal. Civ. Code § 1599).  Courts may consider the central purposes of a contract and, if they determine that the parties "intended for the representative to function as an

unlicensed talent agency or that the representative engaged in substantial procurement activities that are inseparable from managerial services," void the entire contract. *Marathon*, 174 P.3d at 755. The California courts have also not addressed what to do when the litigants are parties to several contracts, and the offending conduct arguably arises under less than all. (*See* Tr. at 23:2-14 (arguing that Phillips has not alleged any procurement activity related to the Recording Agreement or the Publishing Agreement).) "[N]o verbal formulation can precisely capture the full contours of the range of cases in which severability properly should be applied, or rejected" as severability doctrine is "equitable and fact specific" and therefore "directed to the sound discretion of the Labor Commissioner and trial courts in the first instance." *Marathon*, 171 P.3d at 755.

In a case raising analogous issues, the Texas bankruptcy court abstained in the exercise of its discretion from deciding a TAA dispute noting, among other things, that "the California law involved — entertainment law — is an area much more familiar to California courts than this court. Additionally, entertainment law is an area in which California's public policy is implicated." *Todd*, 397 B.R. at 802 (collecting cases). The difficult state law issues regarding whether the Plaintiffs violated the TAA, and if so, what the appropriate remedy should be are predominant. The Labor Commissioner is a specialized tribunal used to dealing with these issues, and although his findings are subject to *de novo* review, his interpretation of the TAA as applied to his factual findings in this case may be entitled to substantial weight and assist the ultimate arbiter of the issues. Accordingly, these factors weigh in favor of permissive abstention.

## 2.    Bankruptcy and Administrative Considerations (Factors 1, 5, 6, 9)

Abstention will not affect bankruptcy proceedings or the administration of the chapter 11 cases. The cases have been confirmed and become effective, and the *Confirmation Order* allows

the Plaintiffs to delay their decision to assume or reject the Agreements until their dispute with

Phillips is finally resolved.  Thus, the open issues between the parties have not delayed the

Debtors' emergence from bankruptcy, consummation of the *Plan*, or payment of the allowed

claims.  It is true that the decision to assume must await the resolution of the parties' dispute, but

there is no material difference to the cases whether the dispute is resolved in California or this

Court.  *Todd*, 397 B.R. at 801.  Thus, abstention will not interfere with the administration of the

estates.

I recognize that the outcome of the dispute may affect the Debtors' ongoing business in

the sense that the Plaintiffs or the other Debtors may have similar contracts with other

contestants.  That, however, is often the case.  Moreover, the resolution of the TAA issues is fact

specific, and will not affect the outcome of other proceedings involving non-parties who will

presumably have to litigate those disputes before the Labor Commissioner in accordance with

the TAA.  *See Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir. 1991) ("Once the

bankruptcy court confirms a plan of reorganization, the debtor may go about its business without

further supervision or approval.  The firm also is without the *protection* of the bankruptcy court.

It may not come running to the bankruptcy judge every time something unpleasant happens."

(emphasis in original).)  The potential for future TAA disputes does not provide an independent

reason to decline abstention and hear a concrete contest that properly belongs before the Labor

Commissioner.

Two factors that weigh in the Plaintiffs' favor are the independent basis for federal

jurisdiction, discussed *supra*, and the fact that the adversary proceeding will not burden the

Court's docket at least any more than any other proceeding.  These two factors, however, do not

overcome the countervailing considerations that compel the conclusion that abstention will not

have a negative impact on the administration of what remains of these cases.  Hence, the

abstention factors relating to bankruptcy law and case administration considerations also weigh

in favor of permissive abstention.

### 3.    Additional Considerations (Factors 10, 11, 12)

In addition to the above considerations, courts may consider the possibility of forum

shopping, the right to a jury trial and the presence of non-debtor parties.  Phillips has accused the

Plaintiffs of forum shopping, a charge they deny.  Given that the Labor Commissioner essentially

stayed the administrative proceeding indefinitely because the Plaintiffs commenced their chapter

11 cases, (*see California Stay Order* at 1 and at ¶ 1 (referring to stay as the "ordinarily required

consequences" of a bankruptcy filing)), the forum shopping charge lacks merit; the Plaintiffs had

nowhere else to go.

Phillips has also indicated that he will request a jury trial, and does not consent to this

Court's authority to enter a final judgment should its consent be required under *Wellness Int'l*

*Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015).  Phillips's jury argument cuts

against abstention because he has no right to a jury trial before the Labor Commissioner, and has

not demanded a jury trial in his *Adversary Proceeding Answer.*  If he is entitled to a jury trial

upon *de novo* review, he will receive one either in the California Superior Court or in the United

States District Court for the Southern District of New York upon withdrawal of the reference of

this adversary proceeding.

Finally, Phillips is a non-debtor party, but is the only non-debtor party.  In any event,

these three additional factors do not inform the Court's discretion one way or the other in light of

the other factors discussed above.

Based on the foregoing, the Court will abstain in favor of the Labor Commissioner to allow him to decide the validity and enforceability of the Agreements under the TAA and the appropriate remedy for any violations although, for the reasons discussed shortly, he cannot award monetary relief to Phillips.

## C.    Stay of Adversary Proceedings

Phillips seeks a stay of this proceeding as an alternative form of relief in the event that this Court finds mandatory abstention inapplicable and declines to permissively abstain.  The decision to abstain effectively stays the adversary proceeding even though Phillips included the stay request as alternative relief.  Since the Court has abstained it will stay the proceeding until the Labor Commissioner renders his determination.

## D.    Relief from the Automatic Stay

Section 362 of the Bankruptcy Code provides, *inter alia*, that a bankruptcy petition automatically stays the commencement and continuation of any judicial or administrative proceeding against the debtor to recover a prepetition claim, 11 U.S.C. § 362(a)(1), and any act to exercise control over property of the estate. 11 U.S.C. § 362(a)(3).  A proceeding that seeks to determine the rights of a debtor and non-debtor party under a prepetition contract is automatically stayed.  *See In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) (the automatic stay protects contract rights because such rights are estate property).  The Bankruptcy Court may grant relief from the automatic stay "for cause," 11 U.S.C. § 362(d)(1), and the party opposing stay relief bears the burden of demonstrating the absence of cause.  11 U.S.C. § 362(g)(2).

24

The stay relief motion does not require an extended discussion because it is inseparable from the decision to abstain. The Court must grant stay relief to permit the Labor Commissioner to decide the issues as to which the Court has abstained. Otherwise, the Labor Commissioner cannot determine these issues.

To be clear, however, the Court is not granting stay relief with respect to any proceedings beyond the Labor Commissioner's determination, and is not granting stay relief to award monetary relief against the Plaintiffs. The deadline for filing claims in the chapter 11 cases has passed, and Phillips made the conscious decision not to file a claim presumably to avoid submitting to the equitable jurisdiction of the Court. As he has failed to file a claim and is not listed on the Debtors' schedules, he is not entitled to receive a distribution, *see* FED. R. BANKR. P. 3003(c)(2), and his counsel acknowledged at oral argument that Phillips is consequently "strictly limited to…seeking the equitable remedy of rescission of the contracts for violation of the [TAA]." (Tr. at 28:18-29-7.) The *California Petition* sought affirmative monetary relief in the nature of disgorgement and damages for breach of fiduciary duty, (*California Petition* at 8), but those claims have been discharged under the *Plan*.

The only monetary relief that Phillips may be entitled to are cure payment under section 365(b)(1) of the Bankruptcy Code should the Plaintiffs assume the Agreements. The cure payments, however, are different from the disgorgement claim, which assumes the Agreements are void *ab initio*, and from non-contractual damages for breach of fiduciary duty. Should the Plaintiffs ultimately prevail and assume the Agreements, this Court will determine the amount of the cure, if any, in accordance with section 365 of the Bankruptcy Code. Accordingly, this Court's abstention and stay relief will not extend to any claim by Phillips for money damages or other monetary liability against the Plaintiffs.

25

**CONCLUSION**

For the reasons set forth above, the Court denies the *Abstention Motion* to the extent it seeks mandatory abstention.  It abstains in the exercise of its discretion but solely with respect to the determination by the Labor Commissioner as to the enforceability of the Agreements and the appropriate remedy for any violations.  The Labor Commissioner cannot, however, award monetary relief to Phillips because any claims, other than possible cure payments, have been discharged.  The Court will also stay the adversary proceeding and grant relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code (and from the discharge and injunction provisions of the *Plan*) for the limited purpose of allowing the parties to proceed before the Labor Commissioner.  Upon the issuance of his determination, the stay will be reimposed and the parties shall notify the Court of the Labor Commissioner's determination and schedule a conference to discuss further proceedings.

Settle order on notice.

Dated: New York, New York
          December 30, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

26